UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cr-60286-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL JOSEPH TOUIZER,

    Defendant.
_____/

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Daniel Touizer's ("Defendant") Motion for Compassionate Release or Modification of an Imposed Term of Imprisonment for Extraordinary and Compelling Reasons Pursuant to 18 U.S.C. § 3582(C)(1)(A), ECF No. [254] ("Motion"), filed on April 26, 2021. The Government filed its Response, ECF No. [256], to which Defendant filed a Reply, ECF No. [257]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.  BACKGROUND**

On May 11, 2018, Defendant pled guilty to conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349. ECF No. [92]; Plea Agreement, ECF No. [93]. On July 24, 2018, this Court sentenced Defendant to a total term of imprisonment of 68 months, followed by a three-year term of supervised release. [156]. Defendant is currently housed at FCI Miami.

In the Motion, Defendant requests a reduction in sentence due to the ongoing COVID-19 pandemic, arguing that his underlying medical conditions put him at an increased risk of serious illness or death. The Government opposes the Motion, arguing that compassionate release is not

warranted in this case because there are no extraordinary and compelling reasons and Defendant remains a danger to the community.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 33,079,543 confirmed cases and 591,265 reported deaths as of May 30, 2021.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated May 30, 2021).

Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II. LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

3

Defendant seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>> . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The *existing* policy statement provides that

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>> (1)(A) extraordinary and compelling reasons warrant the reduction; or
>>
>>> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>>
>> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>>
>> (3) the reduction is consistent with this policy statement.

**Commentary**

**Application Notes:**

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

> (A) **Medical Condition of the Defendant.**—
>
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) **Family Circumstances.**—
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

> compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018).

Although the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons," the United States Court of Appeals for the Eleventh Circuit recently decided that § 1B1.13 is applicable for all § 3582(c)(1)(A) motions, whether filed by the BOP or by a defendant directly, and that courts do not have discretion to develop "other reasons" to justify a reduction in a defendant's sentence. *United States of America v. Bryant*, --- F.3d ----, 2021 WL 1827158, at *2 (11th Cir. May 7, 2021). Accordingly, the Court must apply § 1B1.13 to determine whether extraordinary and compelling circumstances exist.

Moreover, § 3582 delineates how this Court should analyze whether a defendant is entitled to a sentence modification.

> *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*. *Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id*.

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a

6

defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted"). Through this lens, the Court considers the instant Motion.

### III.  DISCUSSION

Defendant requests a reduction in sentence to time-served based upon his underlying medical conditions coupled with the coronavirus pandemic. Specifically, Defendant contends that his "chronic respiratory issues[,] . . . asthmatic symptoms for which he has been prescribed an albuterol inhaler by BOP medical staff[,]" and history of smoking "a combination of marijuana and tobacco" make him immunocompromised. ECF No. [254] at 6-12. Defendant also highlights that his case is unique because the BOP previously determined that he "was at serious risk of sickness or death from COVID-19 if he remained in custody at FCI Miami[,]" and granted Defendant early release to home confinement on May 22, 2020. ECF No. [254] at 5. According to Defendant, the Residential Reentry Center ("RRC") arbitrarily imposed communication restrictions on Defendant and, on November 10, 2020, "revoked [his] home confinement status after apparently issuing an incident report for an alleged failure to follow RRC directives, and reincarcerated [Defendant]." *Id.* The Government opposes the Motion, arguing that Defendant fails to present extraordinary and compelling reasons to warrant compassionate release, and that Defendant remains a danger to the community. Upon review and consideration, the Court concludes that Defendant does not present circumstances warranting compassionate release.

### A.  Administrative exhaustion

As an initial matter, the Court recognizes that Defendant has exhausted his administrative remedies in this case, and the Government does not dispute that the exhaustion requirement is

satisfied. ECF No. [254] at 7. However, as explained below, Defendant fails to demonstrate that extraordinary and compelling circumstances exist.

### B. Extraordinary and compelling reasons

Regarding the "extraordinary and compelling" reasons analysis, Defendant fails to demonstrate that sufficiently compelling circumstances exist under § 3582(c). In his Motion, Defendant explains that his underlying health problems—namely, "chronic respiratory issues," asthmatic symptoms, and history of smoking—put him at a higher risk of serious illness or death if exposed to COVID-19. ECF No. [254] 6-12. The Government responds that Defendant's respiratory condition "has no historical support and even if it was supported, taken alone, is insufficient to rise to the level of serious, exceptional, compelling, or extraordinary." ECF No. [256] at 6.

Recently updated CDC guidance indicates that the following health conditions can make adults of any age more likely to get severely ill due to COVID-19: cancer; chronic kidney disease; chronic lung diseases, including asthma (moderate-to-severe); dementia or other neurological conditions; diabetes (type 1 or type 2); Down syndrome; heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, or hypertension; HIV infection, immunocompromised state (weakened immune system); liver disease; overweight and obesity; sickle cell disease or thalassemia; current or former smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; and substance use disorders.[2] The CDC states that people with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19.[3]

---

[2] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021).

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

8

Indeed, in keeping with § 1B1.13, in order for Defendant's medical condition to provide justification for compassionate release, the Court must find that Defendant is either suffering from a terminal illness, or that his serious physical or medical condition, or serious functional or cognitive impairment, substantially diminishes his ability to provide self-care and from which he is not expected to recover. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A). The record simply does not support either finding in this case.

The Court is certainly sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities, and notes that asthma and a history of smoking are CDC-recognized risk factors for COVID-19. However, the medical records provided in support of Defendant's Motion do not indicate that his ailments are terminal. *See* ECF No. [254-6] at 2 (noting that Defendant suffered from a respiratory infection in February of 2020 that continues to cause him occasional shortness of breath); *see also* ECF No. [254-5] at 3 (February 19, 2020 medical records from Jackson Memorial Hospital, noting that Defendant "present[ed] with progressively worsening rash over the last 1 week" and "[r]eports some shortness of breath he felt past 2 days."). Additionally, Defendant's medical records otherwise do not support the conclusion that he is unable to perform activities of daily living or provide self-care, or otherwise demonstrate that his health is deteriorating.[4]

Moreover, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1,

---

[4] Defendant argues that his ability to provide self-care is substantially diminished at FCI Miami because "FCI Miami staff have refused (or have been unable to) refill [his] Albuterol asthma inhaler despite the instructions on his prescription label[.]" While the Court is mindful of Defendant's concerns, this alone is not enough to warrant extraordinary and compelling circumstances under the standard articulated in *Bryant*, 2021 WL 1827158, at *2.

2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .")). The Court concludes that Defendant has not satisfied his burden of demonstrating that compassionate release is appropriate.[5]

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [254]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 3, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[5] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances warranting a sentence reduction, the Court does not need to address the final consideration of whether Defendant poses a danger to the safety of others or to the community under to § 3142(g).